UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES DOLIS, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | No. 07 C 1816 |
| KEVIN GILSON, Acting Warden[1], | ) ) | The Honorable Virginia M. Kendall, |
| Respondent. | ) | Judge Presiding. |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, respondent answers petitioner's petition for a writ of habeas corpus as follows:

1. Petitioner James Dolis is incarcerated at the Illinois River Correctional Center in Canton, Illinois, where he is identified as prisoner number R42411. Petitioner is in the custody of Kevin Gilson, that facility's acting warden.

2. In 1999, petitioner was charged in the Circuit Court of Cook County with attempt murder, home invasion, and aggravated battery based on an incident in which he entered the home of his ex-girlfriend, Ellen Stefanits, and stabbed Stefanits's teenage son, Glen Podeszwa. (Exh. F at 1). While the case was pending

---

[1] Petitioner is now incarcerated at the Illinois River Correctional Center, where Kevin Gilson is the acting warden. Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, Gilson should be substituted as the respondent. *See, e.g., Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir. 1996) ("If the petitioner is in prison, the warden is the right respondent.").

in the trial court, petitioner wrote the trial judge a series of profanity-laced letters in which he accused the judge, the prosecutor, defense counsel, Stefanits, Podeszwa, and the Chicago Police Department of participating in a wide-ranging conspiracy involving insurance fraud, child molestation, the falsification of court transcripts, and the theft of petitioner's truck. (Exh. O at C52-66). At trial, Stefanits testified that she awoke on February 11, 1999, to find petitioner standing in her hallway, wielding a knife. (Exh. Q at D52-54). Stefanits testified that although she had previously permitted petitioner to live in the house — which she owned — she forced petitioner to move out when he became abusive in September 1997. (*Id.* at D36-38). After that, Stefanits testified, she never again allowed petitioner to reside in her home; she changed the locks and did not give petitioner a new key. (*Id.* at D37-40, D53). Stefanits added that although she locked her door before going to bed on the night of February 10, petitioner had stolen her purse, which contained a set of keys, two days earlier. (*Id.* at D41-44, D73). In addition, Stefanits testified, she later discovered that a hole had been cut in her screen door during the night. (*Id.* at D72-77). The jury acquitted petitioner of attempt murder but convicted him of home invasion and aggravated battery. (Exh. F at 1). Petitioner was sentenced to concurrent terms of imprisonment of 30 and five years, respectively. (*Id.*).

3. On direct appeal, petitioner challenged his sentence and argued that because his letters to the trial judge included complaints about his attorney's performance, the trial judge was required to "make an[] inquiry" into those complaints. (Exh. A, Exh. D at 3). The appellate court affirmed. (Exh. F).

4. In his petition for leave to appeal (PLA) to the Illinois Supreme Court, petitioner raised only his judicial inquiry claim. (Exh. G). The Illinois Supreme Court denied leave to appeal on May 30, 2002. (Exh. H).

5. In August 2002, petitioner filed a petition for state postconviction relief, which the trial court denied. (Exh. K).

6. Petitioner appealed, and the appellate court affirmed, holding that petitioner had forfeited several of his arguments by failing to raise them on direct appeal:

> [Petitioner] argues that . . . defense counsel was ineffective for failing to object to the State's references to family and the holidays during opening and closing arguments and failing to present and argue a motion to quash his arrest. [Petitioner] also argues that . . . the trial court erred in: (1) denying his request to represent himself; (2) responding to the jury's questions during deliberation without him being present; (3) denying his motion for substitution of judges without referring the motion before a different judge for a hearing; (4) denying his motion for a directed verdict. Each of these claims could have been raised on direct appeal, but were not, and, therefore, they are barred by the doctrine of forfeiture. *See* [*People v. Blair*, 831 N.E.2d 604, 615 (Ill. 2005)] (Issues that could have been raised on direct appeal, but were not, are forfeited).

(*Id.* at 3).

7. Petitioner then filed a PLA raising the following claims:

    a. trial counsel was ineffective for:

        (1) failing to call eight witnesses — Rita Dolis, Kay Shrimpl, Jerry Grzanka, James Nunley, James Mazur, John Mazur, Tom Shrepfer, and Nick Krimtovski — at trial (Exh. M at 4, 13-15, 18-19);

        (2) failing to introduce jail visitation logs as evidence at trial (*id.* at 15-16);

(3) advising petitioner that testifying in his own defense would "guarant[ee]" his conviction (*id.* at 17);

(4) failing to object to the prosecutor's opening statement (*id.* at 17-18); and

(5) failing to move to "quash" petitioner's arrest (*id.* at 19-20); and

b. the trial court erred in responding to the jury's questions during deliberation without petitioner being present (*id.* at 20).

The Illinois Supreme Court denied leave to appeal on November 29, 2006. (Exh. N).

8. In April 2007, petitioner filed the instant petition raising the following claims:[2]

1. the trial court erred in failing to make an "inquiry" into his complaints about his trial counsel's performance (Pet. 21-27)[3];

2. the State suborned perjury by Stefanits and Podeszwa (Pet. 28-38);

---

[2] Citations to petitioner's federal petition refer to the hand-written page numbers in the lower right corner of each page.

[3] Respondent does not interpret Claim I as a conflict-of-interest claim because petitioner contends that the trial court was required to inquire into the quality of counsel's performance, rather than the existence a potential division of loyalties that might theoretically affect the quality of counsel's performance. Moreover, any conflict-based claim would be both procedurally defaulted and meritless because: (1) petitioner did not present a conflict claim in state court; (2) the only conceivable "conflict" presented by the facts of petitioner's case — one created by petitioner's complaints about his attorney — is not the type of "conflict" that imposes a duty of inquiry on the trial court, *see Mickens v. Taylor*, 535 U.S. 162, 168-69 (2002) (trial court's awareness of "vague, unspecified possibility of conflict" does not trigger duty to inquire); and (3) even assuming that the trial court was required to inquire into the "conflict," the court's failure to do so would not lower petitioner's burden of proof on a conflict-based ineffective assistance claim, *see id.* at 173-74 ("the trial court's failure to make the *Sullivan*-mandated inquiry does not reduce the petitioner's burden of proof").

4

3. the trial court erred in denying his request to represent himself (Pet. 39-40);

4. the trial court erred in admitting "other crimes evidence" (Pet. 40-45);

5. he was denied the right to testify in his own defense (Pet. 68-70);

6. the trial court erred in responding to the jury's questions during deliberation without him being present (Pet. 71-72);

7. his arrest violated the Fourth Amendment (Pet. 73-78);

8. his sentence was based on unreliable evidence (Pet. 79-81);

9. the trial judge was biased against him (Pet. 82-95);

10. the trial court erred in denying his motion for a directed verdict (Pet. 96-98);

11. his term of supervised release is unconstitutional (Pet. 101-02);

12. trial counsel was ineffective in:

    a. failing to move to transfer the case to a different judge (Pet. 46);

    b. failing to move to "quash" petitioner's arrest (Pet. 46, 51);

    c. failing to object to the prosecutor's opening statement (Pet. 46-47);

    d. failing to object to the admission of certain evidence (Pet. 47-49, 51, 56);

    e. failing to review discovery materials (Pet. 48);

    f. failing to introduce police reports, the grand jury testimony of Detective Christine Nere, and Stefanits's prior inconsistent statements as evidence at trial (Pet. 49, 52, 57-58);

5

- g. making certain errors in cross-examining State witnesses (Pet. 50-54, 56-61, 66-67);

- h. failing to subpoena or otherwise obtain:

    - (1) a transcript of the preliminary hearing (Pet. 52);

    - (2) certain telephone records (Pet. 54-55);

    - (3) "jail visitation logs" (Pet. 55);

    - (4) a bail bond receipt (Pet. 56); and

    - (5) "documents" establishing that an order of protection had been vacated (Pet. 64);

- i. failing to call three witnesses — Dr. Ross Romine, Detective Nere, and a DCFS investigator — at trial (Pet. 53-54, 57);

- j. making certain errors in closing argument (Pet. 47-48, 55-56, 58-59, 67);

- k. failing to request a jury instruction on "prior crimes" (Pet. 55);

- l. failing to "investigate" Podeszwa's psychiatric treatment (Pet. 61);

- m. failing to object to the trial court's evidentiary rulings regarding "DCFS allegations" and petitioner's "subsequent arrests" (Pet. 61-63);

- n. "informing the court [that] he w[ould] be talking about an order of protection" (Pet. 63); and

- o. failing to object to the prosecution's closing argument (Pet. 49, 57); and

13. he is innocent of home invasion because he "reside[d] in Stefanits['s] home" (Pet. 103).

9. Pursuant to Rule 5(b) of the Rules Governing Section 2254 Cases in the United States District Courts, respondent states as follows:

    A.    Petitioner has exhausted his state-court remedies.

    B.    All of petitioner's cognizable claims except for his judicial inquiry claim are procedurally barred.

    C.    The doctrine of non-retroactivity is not relevant to petitioner's case because petitioner does not claim a violation of any newly recognized constitutional right.

    D.    Petitioner's federal petition is timely.

10. Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, respondent will manually file the following exhibits with the Clerk of this Court on Monday, December 29, 2008:

    Exhibit A:    Opening Brief and Argument for Defendant-Appellant, *People v. Dolis*, No. 1-00-0759;

    Exhibit B:    Brief and Argument for Plaintiff-Appellee, *People v. Dolis*, No. 1-00-0759;

    Exhibit C:    Reply Brief and Argument for Defendant-Appellant, *People v. Dolis*, No. 1-00-0759;

    Exhibit D:    Supplemental Brief and Argument for Defendant-Appellant, *People v. Dolis*, No. 1-00-0759;

    Exhibit E:    Petition for Rehearing for Defendant-Appellant, *People v. Dolis*, No. 1-00-0759;

    Exhibit F:    Rule 23 Order, *People v. Dolis*, No. 1-00-0759 (Ill.App. Mar. 7, 2002);

    Exhibit G:    PLA, *People v. Dolis*, No. 93625;

    Exhibit H:    *People v. Dolis*, 775 N.E.2d 5 (Ill. 2002) (denying PLA);

Exhibit I:   Brief of Appellant, *People v. Dolis*, No. 1-05-0988;

Exhibit J:   Brief and Argument for Respondent-Appellee, *People v. Dolis*, No. 1-05-0988;

Exhibit K:   Rule 23 Order, *People v. Dolis*, No. 1-05-0988 (Ill.App. Aug. 9, 2006);

Exhibit L:   Appellant's Petition for Rehearing and Reconsideration, *People v. Dolis*, No. 1-05-0988;

Exhibit M:   PLA, *People v. Dolis*, No. 103550;

Exhibit N:   *People v. Dolis*, 861 N.E.2d 658 (Ill. 2006) (denying PLA);

Exhibit O:   Common Law Record, *People v. Dolis*, No. 1-00-0759;

Exhibit P:   Report of Proceedings, Volume I, *People v. Dolis*, No. 1-00-0759;

Exhibit Q:   Report of Proceedings, Volume II, *People v. Dolis*, No. 1-00-0759;

Exhibit R:   Report of Proceedings, Volume III, *People v. Dolis*, No. 1-00-0759;

Exhibit S:   Common Law Record, *People v. Dolis*, No. 1-05-0988; and

Exhibit T:   Report of Proceedings, *People v. Dolis*, No. 1-05-0988.

## RESPONSE TO PETITIONER'S CLAIMS

As explained more fully below, two of petitioner's claims are not cognizable in federal habeas, one claim is barred by 28 U.S.C. § 2254(d)(1), and the remaining claims are procedurally defaulted. Because petitioner has failed to excuse the defaults by demonstrating cause and prejudice or actual innocence, this Court should deny the petition in its entirety.

**I.  Petitioner's Fourth Amendment And Actual Innocence Claims Are Not Cognizable On Federal Habeas Review.**

Petitioner's claims that his arrest violated the Fourth Amendment (Claim 7) and that he is innocent of home invasion (Claim 13) provide no basis for federal habeas relief.  Petitioner's Fourth Amendment claim provides no grounds for federal habeas relief because there is no indication that petitioner was denied an opportunity to litigate that claim in state court.  *See Stone v. Powell*, 428 U.S. 465, 482 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."); *Cabrera v. Hinsley*, 324 F.3d 527, 530-32 (7th Cir. 2003) (Fourth Amendment claim is not cognizable in federal habeas so long as state court provides mechanism for litigating claim that his not a "sham").  And petitioner's claim that he is innocent of home invasion is not a constitutional claim.  *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) ("[A] claim of 'actual innocence' is not itself a constitutional claim."); *United States v. Evans*, 224 F.3d 670, 674 (7th Cir. 2000) ("[A] conviction does not violate the Constitution (or become otherwise subject to collateral attack) just because newly discovered evidence implies that the defendant is innocent.").  Accordingly, this Court should deny relief on these claims.

## II. Petitioner's Judicial Inquiry Claim Is Barred by 28 U.S.C. § 2254(d)(1).

The Illinois Appellate Court's adjudication of petitioner's claim that the trial court erred in failing to inquire into petitioner's complaints about his counsel's performance (Claim I) did not contradict or unreasonably apply clearly established federal law for purposes of 28 U.S.C. § 2254(d)(1) because the Supreme Court has never held that such an inquiry is constitutionally required. Accordingly, petitioner's judicial inquiry claim is barred by § 2254(d)(1). *See generally Wright v. Van Patten*, 128 S.Ct. 743, 747 (2008) (where Supreme Court cases "give no clear answer to the question presented, let alone one in [petitioner's] favor," habeas relief is unauthorized "[u]nder the explicit terms of § 2254(d)(1)"); *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("lack of holdings from [Supreme Court]" on particular issue means that "state court's decision was not contrary to or an unreasonable application of clearly established federal law").

## III. Petitioner's Remaining Claims Are Procedurally Defaulted.

Procedural default prevents a federal habeas court from considering the merits of a habeas claim where: (1) the claim was not properly presented to the state courts and the state courts would now consider it barred; or (2) the claim was presented to the state courts, but the last state court to consider it refused to reach the merits because of the petitioner's failure to comply with a state procedural requirement. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). To avoid the first type of default, an Illinois petitioner must invoke "one complete round" of

10

the state's established appellate review process by presenting his claims to both the Illinois Appellate Court and the Illinois Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999). If a petitioner fails to do so, and the time for doing so has passed, the claims are procedurally defaulted. *See id.* at 848. The second type of default occurs when the state court decision rests on a state procedural rule that is independent of the federal question and adequate to support the judgment. *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004). A petitioner can excuse either type of procedural default by showing cause for the default and prejudice resulting therefrom, or by convincing the court that he is actually innocent of the crime for which he was convicted. *Perruquet*, 390 F.3d at 514-15.

> A. **Claims 2-5, 8-11, And Certain Ineffective Assistance Sub-Claims Are Procedurally Defaulted Because Petitioner Failed To Present Them To The Illinois Supreme Court.**

Petitioner procedurally defaulted a number of his claims by failing to present them to the Illinois Supreme Court. Specifically, petitioner procedurally defaulted his claims regarding subornation of perjury (Claim 2), self-representation (Claim 3), the admission of "other crimes evidence" (Claim 4), his right to testify (Claim 5), the reliability of the evidence on which his sentence was based (Claim 8), judicial bias (Claim 9), the denial of his motion for a directed verdict (Claim 10), and his term of supervised release (Claim 11) because these claims were not contained in either petitioner's direct appeal PLA or his postconviction PLA. (Exhs. G, M). Because it is now too late for petitioner to raise these claims in one complete round of state court review, they are procedurally defaulted. *See Boerckel*, 526 U.S. at 848.

In addition, although petitioner did present an ineffective assistance claim to the Illinois Supreme Court, he did not present all of the different "subclaims" (*i.e.,* particular allegations of deficient performance) on which he now relies. Petitioner failed to raise in his PLA his ineffective assistance subclaims based on: counsel's failure to move for transfer (Claim 12(a)), counsel's failure to object to the admission of certain evidence (Claim 12(d)), counsel's failure to review discovery materials (Claim 12(e)), counsel's failure to introduce police reports, Detective Nere's grand jury testimony, and Stefanits's prior inconsistent statements as evidence at trial (Claim 12(f)), counsel's errors in cross-examining State witnesses (Claim 12(g)), counsel's failure to obtain a preliminary hearing transcript, certain telephone records, jail visitation logs, a bail bond receipt, and documents establishing that an order of protection had been vacated (Claim 12(h)), counsel's failure to call Romine, Nere, and a DCFS investigator as witnesses (Claim 12(i)), counsel's errors in closing argument (Claim 12(j)), counsel's failure to request a jury instruction on "prior crimes" (Claim 12(k)), counsel's failure to "investigate" Podeszwa's psychiatric treatment (Claim 12(l)), counsel's failure to object to the trial court's evidentiary rulings regarding "DCFS allegations" and petitioner's "subsequent arrests" (Claim 12(m)), counsel's "informing the court" that he would discuss an order of protection (Claim 12(n)), and counsel's failure to object to the prosecutor's closing argument (Claim 12(o)). Accordingly, these sub-claims are likewise defaulted. *See Ben-Yisrayl v. Buss*, 540 F.3d 542, 547 n.1 (7th Cir. 2008) (treating attorney omissions not raised in state court as defaulted); *Stevens v. McBride*, 489 F.3d 883,

894 (7th Cir. 2007) ("the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default"); *see also Bradshaw v. Richey*, 546 U.S. 74, 79 (2005) (characterizing counsel's various acts and omissions as *Strickland* "subclaims" that are individually subject to procedural default).

> **B.** **Claims 3, 6, 10, 12(b), 12(c), And 12(o) Are Procedurally Defaulted Because The State Appellate Court Disposed Of Them On The Independent And Adequate State Procedural Ground Of Forfeiture.**

Petitioner's claims that the trial court erred in denying his request to represent himself (Claim 3), responding to the jury's questions during deliberation without him being present (Claim 6), and denying his motion for a directed verdict (Claim 10), as well has his ineffective assistance sub-claims based on counsel's failure to move to "quash" his arrest (Claim 12(b)) or object to the State's opening statement (Claim 12(c)) and closing argument (Claim 12(o)), are procedurally defaulted because the last state court to consider them disposed of them on the independent state law ground of forfeiture. Specifically, the state appellate court held: "Each of these claims could have been raised on direct appeal, but were not, and, therefore, they are barred by the doctrine of forfeiture. *See* [*People v. Blair*, 831 N.E.2d 604, 615 (Ill. 2005)] (Issues that could have been raised on direct appeal, but were not, are forfeited)." (Exh. K at 3). Because Illinois's forfeiture rule qualifies as an independent and adequate state ground of decision, these claims are procedurally defaulted. *See, e.g., Szabo v. Walls*, 313 F.3d 392, 395-97 (7th Cir.

13

2002) ("A state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time — as state rules define those courts, ways, and times."); *see also, e.g., Schaff v. Snyder*, 190 F.3d 513, 525 (7th Cir. 1999) (noting that Illinois courts require some ineffective assistance sub-claims to be brought on direct appeal).

> **C.** **Petitioner's Failure To Demonstrate His Innocence Blocks Federal Review Of His Defaulted Claims.**

Although procedural default may be excused where a petitioner shows "cause" for the default and resulting prejudice, or demonstrates that he is actually innocent, neither circumstance applies in petitioner's case. Petitioner does not allege "cause" for his defaults, and although he contends that he is innocent of home invasion because he had authority to enter Stefanits's home, he offers little evidence to support that claim. Petitioner provides affidavits from four friends (John Mazur, James Mazur, Tom Shrepfer, and Jerry Grzanka) who aver that — "to [their] knowledge" — petitioner resided in Stefanits's home on February 11, 1999. (Pet. 148, 152, 154, 155). The problem with these witnesses — as the qualified wording of their affidavits suggests — is that they lack personal knowledge that Stefanits granted petitioner authority to enter her home on that day. Their testimony thus is not probative of petitioner's authority to enter the home. Two additional witnesses — petitioner's mother, Rita Dolis, and an acquaintance, James Nunley — offer testimony that is not only incompetent but also vague: Rita avers that petitioner lived with Stefanits until "about" February 11, 1999, and Nunley avers that

14

petitioner lived there until "about Feb[ruary 19]99" (Pet. 150, 157); neither demonstrates any personal knowledge regarding petitioner's authority to enter Stefanits's home. Petitioner's final witness — his aunt, Kay Shrimpl — avers only that Stefanits told her that petitioner lived in her home at some unspecified point "prior to" his February 11, 1999 arrest. (Pet. 157). Shrimpl's hearsay testimony does not speak to petitioner's authority to enter Stefanits's home on the day in question; it merely confirms Stefanits's trial testimony that petitioner resided in her home at some earlier time. Lastly, petitioner's own affidavit includes his vague, self-serving assertion that he had Stefanits's "permission" to enter her home on the morning of February 11, but it does not explain how he gained entry: petitioner does not dispute that Stefanits's door was locked and that he had not been provided with a key, and he does not contend that either Stefanits or Podeszwa personally admitted him. (Pet. 160). Moreover, petitioner does not deny stealing Stefanits's purse several days earlier or cutting a hole in her screen door, and thus his affidavit does little to undermine the inference that he gained entry to her home by cutting the screen and unlocking the door with a stolen key. Because petitioner's witnesses offer no competent testimony regarding petitioner's authority to enter Stefanits's home on the day in question, and because his own vague assertion that he entered with "permission" is insufficient to counter Stefanits's detailed testimony to the contrary, petitioner has failed to demonstrate that he is "innocent" of home invasion. *See generally House v. Bell*, 547 U.S. 518, 538 (2006) (habeas court faced with "actual innocence" claim must assess new evidence in light of evidence offered

15

at trial and determine whether it is more likely than not that the new evidence would lead a reasonable juror to acquit). Accordingly, this Court should not consider his defaulted claims.

## **CONCLUSION**

Because two of petitioner's claims are non-cognizable, one claim is barred by § 2254(d)(1), and the remaining claims are procedurally defaulted, this Court should deny the petition in its entirety. Should this Court rule that certain claims are cognizable or are not defaulted, respondent requests 30 days from that ruling to address those claims on the merits.

December 26, 2008

Respectfully submitted,

Lisa Madigan
Attorney General of Illinois

By: /s/ Retha Stotts
RETHA STOTTS, Bar #6270680
Assistant Attorney General
100 W. Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
PHONE: (312) 814-0010
FAX: (312) 814-5166
EMAIL: rstotts@atg.state.il.us

# **CERTIFICATE OF SERVICE**

I certify that on December 26, 2008, I electronically filed respondent's **Answer** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, and on the same date mailed a copy of the document via the United States Postal Service to the following non-CM/ECF user:

>James Dolis, #R42411
>Illinois River Correctional Center
>Route 9 West
>P.O. Box 1900
>Canton, Illinois 61520.

>/s/ Retha Stotts_____
>RETHA STOTTS, Bar #6270680
>Assistant Attorney General
>100 W. Randolph Street, 12th Floor
>Chicago, Illinois 60601-3218
>PHONE: (312) 814-0010
>FAX: (312) 814-5166
>EMAIL: rstotts@atg.state.il.us