♣

|  |  |  |
|---|---|---|
| JAMES DOLIS, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 07 C 1816 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| KEVIN GILSON, Acting Warden, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner James Dolis's federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). For the following reasons, the Court denies Dolis's habeas petition.

## BACKGROUND

### I. Factual Background

The Court begins with a brief recounting of the relevant facts as determined by the Illinois Appellate Court, *see Easley v. Frey*, 433 F.3d 969, 970 (7th Cir. 2006), and supplemented by testimony in the trial record before the Circuit Court of Cook County. [1] A jury convicted Dolis of

---

[1] The Court adopts the underlying facts as set forth by the Illinois Appellate Court in *People v. Dolis*, No. 1-00-0759 (Ill. App. Ct. March 7, 2002) (unpublished) and *People v. Dolis*, No. 1-05-0988 (Ill. App. Ct. Aug. 9, 2006) (unpublished) because Dolis does not present clear and convincing evidence challenging those facts. *See Ward v. Hinsley*, 377 F.3d 719, 721 (7th Cir. 2004) (state court's unrebutted factual determinations presumed correct). However, because those decisions provide a quite abbreviated version of the factual background, the Court also summarizes facts from testimony provided in Dolis's trial before the Circuit Court of Cook County, *People v. Dolis*, No. 1-00-0988 (Ill. Cir. Ct. May 19, 2006) (unpublished).

home invasion and aggravated battery after he entered the home of his ex-girlfriend, Ellen Stefanits ("Stefanits"), on the morning of February 11, 1999 and stabbed Stefanits's teenage son, Glenn Podeszwa ("Podeszwa"), in the arm. (R. 47, Ex. F at 91-92.)

At trial, Stefanits testified that she had previously allowed Dolis to live in the home she owned; but she forced him to move out in September 1997 after he became abusive. (R. 48, Ex. Q at D36-38.) She further testified that Dolis was not living at her residence at the time of the incident. (R. 48, Ex. Q at D36-38.) Once Dolis moved out, Stefanits changed the locks and did not give Dolis a key. (R. 48, Ex. Q at D37-40, D53.) Nonetheless, Dolis continued to come to Stefanits's home from September 1997 through February 1999, except during August 1998, and September 21, 1998 through January 19, 1999, when he was incarcerated. (R. 48, Ex. Q at D37-38, D133.)

Stefantis also testified that on February 8, 1999, Dolis appeared at her home asking for money and when she refused, he stole her purse that contained a set of her car keys and left with her car. (R. 48, Ex. Q at D41-44, D73.) The next day, Dolis appeared at Stefanits's work to return her purse and car to ask for money. (R. 48, Ex. Q at D44-45.) After Stefanits refused his request, Dolis removed the starter wire from her car. (R. 48, Ex. Q at D48.) The following afternoon, Stefanits saw Dolis attaching a license plate to a truck in a parking lot and informed a nearby police officer that Dolis had stolen and disabled her car. (R. 48, Ex. Q at D49-50.) Dolis fled on foot when the officer approached him. (R. 48, Ex. Q at D49-50.) After this incident, Dolis's brother, State Trooper Michael Dolis ("Trooper Dolis"), testified that Dolis called him, and Trooper Dolis's caller I.D. showed that Dolis had called him from the home of a friend. (R. 48, Ex. Q at D157-158.)

Later, on the night of February 10, 1999, Stefanits testified that she discovered that a hole had been cut in her screen door. (R. 48, Ex. Q at D72-77.) When she awoke on the morning of February 11, 1999, she discovered Dolis standing in her hallway holding a knife and blaming her

2

for having his truck towed. (R. 48, Ex. Q at D52-54.) After the argument escalated and Stefanits began to scream, Podeszwa entered the kitchen and Dolis "lunged" at him and stabbed him in the arm. (R. 48, Ex. Q at D54-56, 134-137).

Once Stefanits convinced Dolis to leave, she testified that she phoned the police to report the incident and took Podeszwa to the hospital. (R. 48, Ex. Q at D67-68.) Later that morning, according to Trooper Dolis's testimony, Dolis phoned Trooper Dolis to check on Stefanits's status. (R. 48, Ex. Q at D158.) Trooper Dolis noticed that the caller I.D. indicated that Dolis was calling from the same residence that he had called from the day before. (R. 48, Ex. Q at D158.) After calling Stefanits to confirm that an incident had occurred, Trooper Dolis notified the police as to Dolis's whereabouts. (R. 48, Ex. Q at D159.) The police arrested Dolis later that day. (R. 48, Ex. Q at D159-160.)

## II. Procedural Background

The police charged Dolis with home invasion, attempted murder, and aggravated battery. During his trial, Dolis wrote the trial judge a number of inflammatory letters, accusing the judge, prosecutor, defense counsel, Stefanits, Podeszwa, and the Chicago Police Department of participating in a conspiracy to, among other things, convict him. (R. 47, Ex. O at C52-66.) The jury acquitted Dolis of attempted murder but convicted him of home invasion and aggravated battery. (R. 47, Ex. F at 1.) He was sentenced to thirty years incarceration for home invasion and five years for aggravated battery to run concurrently, followed by a term of supervised release. (R. 47, Ex. F at 1.)

Dolis appealed his convictions to the Illinois Appellate Court, claiming that the trial court judge abused his discretion by relying on inadmissible evidence during sentencing and not making an inquiry into his complaints about his attorney's performance. *See People v. Dolis*, No. 1-00-0759

(Ill.App.Ct. March 7, 2002) (unpublished); (R. 47, Ex. A at 17, 22.)  In addition, Dolis filed a supplemental brief that raised ineffective assistance of counsel claims against his trial counsel, alleging that he failed to call certain witnesses and failed to establish evidence of false testimony or bias among the State's witnesses.  (R. 47, Ex. D at 3-4.)  The appellate court affirmed Dolis's convictions, finding that the trial court did not abuse its discretion at sentencing or in failing to make judicial inquiry into trial counsel's performance.  (R. 47, Ex. F at 2.)  Analyzing Dolis's ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), the appellate court also found that trial counsel's decision to call certain witnesses was within his discretion in formulating legal strategy, and that Dolis failed to demonstrate that he was prejudiced as a result of trial counsel's decisions.  (R. 47, Ex. F at 4-5.)  Dolis then filed a petition for leave to appeal (PLA) to the Illinois Supreme Court, raising only his judicial inquiry claim, which the court denied on May 30, 2002.  *See People v. Dolis*, 775 N.E.2d 5 (Ill. 2002).

In August 2002, Dolis filed a petition for post-conviction relief in the Circuit Court of Cook County pursuant to the Illinois Post-Conviction Hearing Act, 725 ILL. COMP. STAT. 5/122-1 *et seq*, claiming ineffective assistance of both his trial and appellate counsel, numerous errors by the trial court, and unconstitutional arrest.  (R. 47, Ex. K at 3.)  The State moved to dismiss the petition, and the court granted the motion.  (*See* R. 47, Ex. K at 2.)

Dolis appealed the dismissal, and the appellate court affirmed the ruling of the Circuit Court in *People v. Dolis*, No. 1-05-0988 (Ill. App. Ct. Aug. 9, 2006) (unpublished).  (R. 47, Ex. K.)  First, the appellate court held that because Dolis raised his claims of ineffective assistance of counsel due to counsel's failure to call certain witnesses and effectively cross-examine the State's witnesses on direct appeal, those claims were barred by the doctrine of *res judicata*.  (R. 47, Ex. K at 2-3.)  Dolis

4

also brought the claim of improperly received testimony regarding his prior violent behavior toward women on direct appeal, such that it was barred by *res judicata*. (R. 47, Ex. K at 2-3.)

The appellate court next addressed Dolis's claims that were not raised on direct appeal, finding all to be forfeited pursuant to *People v. Blair*, 831 N.E.2d 604, 615 (Ill. 2005). (R. 47, Ex. K at 3.) The first two claims pertained to ineffective assistance of counsel based on counsel's failure to object to the State's opening and closing arguments and failure to present and argue a motion to quash his arrest. (R. 47, Ex. K at 3.) The other claims not raised on direct appeal all pertained to trial court error, specifically alleging that the trial court erred in: (1) denying Dolis's request to represent himself; (2) responding to the jury's questions during deliberation without Dolis present; (3) denying his motion for a substitution of judges without referring the motion before a different judge for a hearing; and (4) denying his motion for a directed verdict. (R. 47, Ex. K at 3-4.)

The court then turned to claims raised by Dolis on direct appeal and thus not forfeited. First, it held that Dolis's claim of ineffective assistance of counsel based on his counsel's advice about whether to testify was based on facts outside of the record that could have been raised on appeal. The court performed a *Strickland* analysis and determined that because Dolis affirmatively stated at trial that it was his decision not to testify, he did not meet his burden of establishing ineffective assistance under *Strickland*. (R. 47, Ex. K at 4) (citing *People v. McCleary*, 819 N.E.2d 330 (Ill. 2004)). Dolis's remaining ineffective assistance of appellate counsel claims consisted of a "laundry list [of claims]. . . that appellate counsel allegedly failed to raise on direct appeal." (R. 47, Ex. K at 5.) The appellate court deemed these claims waived for failure to comply with Illinois Supreme Court Rule 341(e)(7), which requires an appellant's brief to contain an "[a]rgument, which shall contain the contentions of the appellant and reasons therefore, with citation of the authorities and the pages of the record." (R. 47, Ex. K at 5.) Finally, the appellate court found Dolis's general

argument that the trial court erred in dismissing his post-conviction petition because he stated the "gist of a meritorious constitutional claim" to be "without merit" because Dolis was required to make a "substantial showing of a constitutional violation."  (R. 47, Ex. K at 6.)

On November 13, 2006, Dolis filed a second PLA with the Illinois Supreme Court.  (R. 47, Ex. M.)  In this PLA, Dolis: (1) raised a claim of innocence of home invasion based on additional affidavits regarding Dolis's residence at the time of the incident; (2) asserted ineffective assistance of trial counsel for (a) failing to present jail visitation records or witnesses indicating that Stefanits was still involved in a relationship with Dolis when he was in jail, (b) telling Dolis that he would be found guilty if he testified, (c) failing to object to the prosecutor's opening remarks; and (d) failing to quash his arrest; and (3) argued that the trial court erred by responding to the jury's questions during deliberations without Dolis present.  (R. 47, Ex. M.)  On November 29, 2006, the Illinois Supreme Court denied Dolis's petition without comment.  *See People v. Dolis*, 861 N.E.2d 658 (Ill. 2006); (R. 47, Ex. N.)

During all of these proceedings, Dolis had conflict with both his trial and appellate counsel. Because of his dissatisfaction with his representation, Dolis submitted a pro se supplemental appeal to his original convictions and pro se supplemental PLAs to the Illinois Supreme Court for both the original conviction and the dismissal of his post-conviction petition.  (*See* R. 50, Ex. U-W; R. 51 at 3, 8)  When Dolis submitted these documents to the Illinois Appellate Court and the Illinois Supreme Court, his counsel had already filed papers on his behalf.  (R. 50, Ex. U-W.)  The clerks of both courts sent letters to Dolis informing him that they could not accept his supplemental briefs and PLAs because counsel had already filed on his behalf.  (R. 50, Ex. U-W.)  The Illinois Supreme Court allowed Dolis to file a motion to substitute his pro se PLA addressing his post-conviction petition for the one filed by his counsel, but the court denied this motion.  (R. 50, Ex. W.)

In April 2007, Dolis filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising claims that: (1) the trial court erred in failing to make an inquiry into his complaints about his trial counsel's performance; (2) the State suborned perjured testimony by Stefanits and Podeszwa; (3) the trial court erred in denying his request to represent himself; (4) the trial court erred in admitting "other crimes evidence"; (5) he was not informed of certain "charges" made by Stephanits at trial in order to prepare a defense (including that Dolis took things from her home and intimidated her at work); (6) twelve separate "sub-claims" of ineffective assistance of counsel detailed below; (7) that he was denied the right to testify in his own defense; (8) the trial court erred in entertaining the jury's questions during deliberation without him being present; (9) his arrest and counsel's failure to quash that arrest violated the Fourth Amendment; (10) the trial court relied on inaccurate evidence in imposing the maximum sentence; (11) the trial judge was biased against him; (12) his conviction was based on insufficient evidence; (13) he is innocent of home invasion because he resided in Stefanits's home; and (14) his term of supervised release is unconstitutional.

Dolis's twelve separate "sub-claims" of ineffective assistance of counsel allege that trial counsel: (a) failed to move to transfer the case to a different judge; (b) failed to move to quash petitioner's arrest; (c) failed to object to the prosecutor's opening statement; (d) failed to request a side bar when the state used leading questions in its direct examination of Stefanits; (e) failed to introduce police reports, the grand jury testimony of Detective Christine Nere, and Stefanits's prior inconsistent statements as evidence at trial; (f) made errors in establishing witnesses' bias in cross-examination; (g) failed to subpoena or obtain a transcript of the preliminary hearing, subpoena phone records, a bail bond receipt, and documents establishing that an order of protection had been vacated; (h) failed to call Dr. Ross Romine, Detective Nere and a DCFS investigator as witnesses to testify; (i) suggested that Dolis was guilty during closing arguments; (j) failed to request a jury

instruction on "prior crimes" after inducing Stefanits to testify about certain of those crimes and about the order of protection she brought against him; (k) failed to investigate Podeszwa's psychiatric treatment; and (l) failed to object to the prosecution's closing argument. The State agrees that Dolis has exhausted all of his state-court remedies and that his petition is timely.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of, federal law clearly established by the Supreme Court. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 403 (2000). Under the "contrary to" prong of this standard, a habeas petitioner must show that "the state court confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite [to the Court's]." *Williams*, 529 U.S. at 405. Under the "unreasonable application" prong, a petitioner must show that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005); *see also Williams*, 529 U.S. at 410 (an *unreasonable* application of federal law is different from an *incorrect* application of federal law) (emphasis in original). A state court's decision must lie "well outside the boundaries of permissible differences of opinion" to be found objectively unreasonable. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009) (citation omitted).

## DISCUSSION

### I.     Exhaustion and Procedural Default

Before bringing a habeas claim in federal court, a petitioner must exhaust all remedies available to him in state court. *See Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009). "Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim to the state courts, the exhaustion doctrine precludes a federal court from granting relief on that claim." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

The "separate but related doctrine of procedural default," *id.*, applies when a habeas petitioner "has exhausted his state court remedies without properly asserting his federal claim at each level of state court review," *Crockett v. Hulick*, 542 F.3d 1183, 1192 (7th Cir. 2008) (citation omitted). More specifically, procedural default prevents a federal habeas court from considering the merits of a claim where: "(1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Perruquet*, 390 F.3d at 514. To avoid the latter type of default, a petitioner must invoke "one complete round of the state's established appellate review process" by presenting claims both to the Illinois Appellate Court and to the Illinois Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

a. **Claims Where State Court Ruling Rested on Independent and Adequate Procedural Grounds**

Certain of Dolis's claims are procedurally defaulted because the appellate court found them forfeited in *People v. Dolis*, No. 1-05-0988 (Ill. App. Ct. Aug. 9, 2006) (unpublished). The doctrine of forfeiture is a state procedural rule that constitutes an adequate and independent state ground to support a judgment, and consequently bars federal habeas review. *See Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2004) ("a state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, at the right time," and "[f]ailure to comply with the state's procedural rules furnishes independent and adequate state ground that bars federal collateral review").

On direct appeal, Dolis argued only that the trial court erred in relying on testimony from Nicholas Romanenko about Dolis's history of abusive behavior towards women during sentencing and failed to inquire into his complaints about trial counsel, and that his trial counsel was ineffective for failing to call certain witnesses and failing to establish the bias of others. Dolis, however, brought many additional claims in his post-conviction petition. In upholding the Circuit Court's dismissal of Dolis's post-conviction petition, the appellate court found that he had forfeited the following claims because they could have been raised on direct appeal but were not: (1) denial of his request to represent himself; (2) response to jury questions during deliberations outside of his presence; (3) denial of his motion for a directed verdict; and (4) ineffective assistance sub-claims based on his counsel's failure to move to quash his arrest or object to the state's opening and closing statements. *See People v. Dolis*, No. 1-05-0988 (Ill. App. Ct. 2006) (citing *People v. Blair*, 831 N.E.2d 604, 615 (Ill. 2005)). These post-conviction petition claims correspond to Dolis's current claims 3, 6 (b), (c), and (l), and 8. Because the doctrine of forfeiture is well-established in Illinois

law and provides an independent and adequate state ground barring federal habeas review, *see Szabo*, 313 F.3d at 395, Dolis's Claims 3, 6 (b), (c), and (l), and 8 are dismissed as procedurally defaulted.

### b. Claims Not Raised in State Court

### i. Trial Court Error

Dolis's habeas claims 1, 2, 4, 5, 7, 10, 11, and 12, allege the following errors in his trial: (1) failure by the trial judge to make an inquiry into his trial counsel's performance; (2) perjury by Stefanits and Podeszwa; (4) admittance of "other crimes evidence"; (5) basing his sentence on unreliable evidence, including charges made by Stephanits that Dolis did not have warning about; (7) denying Dolis the right to testify in his own defense; (11) bias of the trial judge; (12) convicting Dolis on insufficient evidence. Dolis did not raise claims 2, 4, 5, 7, 11 or 12 in either his direct appeal PLA or his post-conviction PLA to the Illinois Supreme Court. (*See* R. 47, Ex. G, M.) Because it is too late for Dolis to raise those claims in one complete round of state court review, they are procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848 (constitutional issues must be raised in "one complete round" of the state's appellate review process, including filing "a petition for discretionary review in the Illinois Supreme Court" on that issue). Dolis did, however, raise his judicial inquiry claim (claim 1) on direct appeal and in his first PLA, and so that claim survives procedural default and is addressed in Section IV below. *See People v. Dolis*, No. 1-00-0759 (Ill. App. Ct. March 7, 2002) (unpublished); *People v. Dolis*, 775 N.E.2d 5 (Ill. 2002).

### ii. Errors at Sentencing

In his tenth claim, Dolis contends that trial court relied on inaccurate evidence in imposing the maximum sentence for his crimes. Because Dolis did not raise this claim in either his direct appeal PLA or his postconviction PLA (*see* R. 47, Ex. G, M) and it is too late for this claim to

proceed through a complete round of state court review, it is dismissed as procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848.

### iii. **Innocence**

In his thirteenth claim, Dolis argues that he is innocent of his conviction of home invasion because he resided in Stefanits's home at the time of the arrest. A claim of actual innocence is not itself a constitutional claim, and therefore is not cognizable on habeas except as "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *see also Milone v. Camp*, 22 F.3d 693, 699-700 (7th Cir. 1994) (a claim of actual innocence is relevant in determining whether a procedurally defaulted habeas claim may be brought before a federal tribunal at all, and beyond that is only relevant "insofar as it bears on a constitutional issue or a matter of federal statutory law" like the execution of a factually innocent person). Therefore, this Court examines Dolis's claim of innocence only in the context of whether it obligates the Court to consider his otherwise procedurally defaulted claims (*see* Section III (b) below).

### iv. **Supervised Release Term**

In his fourteenth claim before this Court, Dolis alleges that the prison review board and the police are conspiring to lengthen the term of his sentence through his three year term of supervised release. Again, because Dolis did not raise this claim in either his direct appeal PLA or his postconviction PLA (R. 47, Ex. G, M) and it is too late for this claim to proceed through a complete round of state court review, it is dismissed as procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848.

v.        **Ineffective Assistance**

Finally, in twelve separate sub-claims, Dolis asserts ineffective assistance of his trial counsel. Disregarding the sub-claims found to be forfeited by the Illinois Appellate Court, the sub-claims remaining in Dolis's ineffective assistance claim are: (a) failure to move to transfer the case to a different judge; (d) failure to request side bar when the state used leading questions in its direct examination of Stefanits; (e) failure to introduce police reports, the grand jury testimony of Detective Christine Nere, and Stefanits's prior inconsistent statements as evidence at trial; (f) errors in establishing witnesses' bias in cross-examination; (g) failure to subpoena or obtain a transcript of the preliminary hearing, subpoena phone records, a bail bond receipt and documents establishing that an order of protection had been vacated; (h) failure to call Dr. Ross Romine, Detective Nere and a DCFS investigator as witnesses to testify; (i) suggestions of Dolis's guilt during closing arguments; (j) failure to request a jury instruction on "prior crimes" after inducing Stefanits to testify about certain of those crimes and about the order of protection she brought against him; and (k) failed to investigate Podeszwa's psychiatric treatment. Although Dolis's second PLA to the Illinois Supreme Court presented an ineffective assistance of counsel claim, it did not raise any of the sub-claims upon which he now relies, instead raising only claims that the Illinois Appellate Court had already deemed forfeited. (*See* R. 47, Ex. M) (presenting ineffective assistance arguments for (1) failing to present jail visitation records indicating that Stefanits was still involved in a relationship with Dolis when he was in jail, (2) telling Dolis that he would be found guilty if he testified, and (3) failing to object to the prosecutor's opening remarks). Accordingly, each of these sub-claims is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 845; *see also Ben-Yisrayl v. Buss*, 540 F.3d 542, 547 n. 1 (7th Cir. 2008) (claims of ineffective assistance not raised in state court proceedings are defaulted).

**Claims Raised in Pro Se Supplemental Briefs**

In Dolis's Response to the State's Answer to his habeas petition, he contends that he maintained all of his current claims in the state courts by filing them in pro se supplemental briefs. *Pet. Resp.* at 1, 3-4. Although the clerks of both the Illinois Appellate Court and the Illinois Supreme Court confirm that Dolis tendered supplemental briefs, none were accepted by either court because they violated rules preventing a party from filing more than one brief or PLA in a single case. *See* Ex. U-W. Because these briefs were never filed, this Court is unable to verify whether all of the above claims (claims 1, 2, 4, 5, 6(a) (d) (e) (f) (g) (h) (i) (j) and (k), 7, 11, 12, 13, and 14) were raised in any or all of Dolis's supplemental briefs. Even if these claims were raised in his supplemental briefs, however, the state court refused to consider them based on a clearly established state procedural rule—the Illinois rule preventing parties from filing more than one brief or PLA, *see* ILL. SUP. CT. R. 315 (PLAs), 341 (briefs). As such, these claims are still procedurally defaulted pursuant to an independent and adequate state procedural rule. *See Coleman v. Thompson*, 501 U.S. 722, 757 (1991) (holding that where a brief was rejected based on a state rule requiring it to be filed within thirty days of the judgment, the claims raised in that brief were procedurally defaulted based on an independent and adequate state procedural rule).[2]

_____

[2] Petitioner notes that the Seventh Circuit recently held, in an unpublished opinion, that a habeas petitioner did not procedurally default certain claims by attempting to raise them in *pro se* supplemental briefs before the Illinois Appellate Court and the Illinois Supreme Court. *See Kizer v. Uchtman*, 165 Fed. Appx. 465, 468 (7th Cir. 2006). But even if *Kizer* did apply here (setting aside the fact that the Seventh Circuit designated its opinion in *Kizer* as non-precedential), the court in *Kizer* specifically noted that "because the State has expressly disclaimed any reliance upon it, we do not address in this Order whether the independent and adequate state ground doctrine could support a procedural default determination." *Id.* at 467 n. 1. Thus, *Kizer* does not speak to the issue of whether the independent and adequate state ground doctrine applies to bar arguments raised in supplemental PLAs, instead holding only that the exhaustion doctrine does not bar such arguments. *See id.* Moreover, the State had no reason to raise an independent and adequate state ground argument in *Kizer* because, in that case, the Illinois Appellate Court denied the petitioner's request to file a *pro se* supplemental brief "without further explanation" and the Illinois Supreme Court denied his request "without explanation"—hence citing no procedural rule to justify their denials. *See id.* at 466. Unlike the briefs in *Kizer*, Dolis's supplemental briefs were rejected as violating clearly established Illinois Supreme Court Rules. *See* ILL. SUP. CT. R. 315, 341; *see also Pet.* at 9(A) (letter from clerk of Illinois Supreme Court to petitioner explaining that "there is no provision in the Illinois Supreme Court Rules for filing a second petition for leave to appeal by the same part under the same Appellate Court disposition order"). Thus, the Seventh Circuit's reasoning in *Kizer* is inapplicable here.

II.    **Excusing Procedural Default**

This Court may still hear Dolis's procedurally defaulted claims if he can demonstrate both

cause for and prejudice resulting from the procedural default, or alternatively that a fundamental

miscarriage of justice would occur if this Court refused to hear his claims because he is actually

innocent. *See House v. Bell*, 547 U.S. 518, 536 (2006).

a.    **Cause and Prejudice**

To demonstrate cause adequate to excuse a procedural default, a petitioner must point to

"some objective factor external to the defense [which] impeded counsel's efforts to comply with the

State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, he

"must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of

prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial

with error of constitutional dimensions." *See Perruquet*, 390 F.3d at 515 (emphasis in original)

Dolis argues that his appellate counsel's failure to raise meritorious issues in his state court

proceedings constitutes cause excusing his procedural default. *See Pet. Resp.* at 13, Doc. 51 at 8,

13; Doc. 53 at 5. In certain circumstances, ineffective assistance of counsel resulting in counsel's

failure to preserve issues for review can constitute cause to excuse procedural default. *See Murray*,

477 U.S. at 488-89. Such claims of ineffective assistance of counsel, however, must be adequately

presented to the state courts before they may be used to establish cause for procedural default. *See

id*.

Here, the alleged ineffective assistance of Dolis's appellate counsel cannot serve as cause

that excuses his procedural defaults because Dolis did not properly present his claims for ineffective

assistance of appellate counsel before the state courts. In his appeal of the Circuit Court's dismissal

of his post-conviction petition, Dolis included a list of errors his appellate counsel allegedly made

that believed constituted ineffective assistance of counsel. The appellate court, however, did not consider the issue of ineffective assistance of appellate counsel. Noting that Dolis's brief "merely contain[ed] a laundry list of claims that appellate counsel allegedly failed to raise on direct appeal," the appellate court found that the Dolis failed to comply with Supreme Court Rule 341(e)(7) because he did not submit argument and reasoning in support of his ineffective assistance claims. Claims not in compliance with Rule 341(e)(7) are waived and therefore not considered by the appellate court. *See People v. Franklin*, 656 N.E.2d 750, 758 (Ill. 1995) (citing *People v. Patterson*, 610 N.E.2d 16, 35 (Ill. 1992)). Furthermore, failure to comply with state procedural rules like Rule 341(e)(7) constitutes an independent and adequate state ground that bars federal habeas corpus review. *See Szabo*, 313 F.3d at 395. Thus, Dolis's claim of ineffective assistance of appellate counsel is itself procedurally defaulted and cannot serve as cause to excuse his other procedural defaults. *See Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (finding that petitioner could not raise ineffective assistance of appellate counsel as "cause" excusing other procedural defaults when that claim itself was procedurally defaulted).

b. **Innocence**

A petitioner may also overcome procedural default by showing that a fundamental miscarriage of justice would result if the federal court did not hear his claims. *See Schulp v. Delo*, 513 U.S. 298, 327-329 (1995). To satisfy this standard, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id*. at 324. The reviewing court must consider all new evidence "without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial" to determine if is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" with the new evidence. *House*,

547 U.S. at 536-37. "To demonstrate actual innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005). Because this type of evidence is rarely available, the vast majority of actual innocence claims are not successful. *See Schulp*, 513. U.S. at 324.

The evidence introduced by Dolis fails to meet this demanding standard. In his petition, Dolis offers nine new affidavits in support of his claim, all but one of which attempt to establish that Dolis resided with Stefanits at 3340 N. Kilpatrick St. at the time of the home invasion.[4] *See Pet.*, 148, 152, 154, 155, 157, 158; *Pet. Resp.* at 21; *Pet. Supp. Resp.* at 6. In a further attempt to substantiate his claim that he resided at Stefanits's home and thus cannot be guilty of home invasion, Dolis submits two complaints filed against him by Stefanits and Podeszwa after the incident, both of which list his residence as 3340 N. Kilpatrick St. *Pet.* at 115-16. Finally, Dolis offers jail visitation records from the period of his incarceration between September 21, 1998 and January 19, 1999 in an attempt to demonstrate that because Stefanits visited him in jail, they were living together and in an ongoing relationship at the time of the incident. *Id.* at 126-140.

Under Illinois law, a defendant is guilty of home invasion "when *without authority* he or she knowingly enters the *dwelling place of another* when he or she knows or has reason to know that one or more persons is present" and uses a firearm or other dangerous weapon to threaten the imminent use of force or to intentionally cause injury. 720 Ill. Comp. Stat. 5/12-11 (2001) (emphasis added). The affidavits offered by Dolis do not factually support a clear finding that Dolis

---

[4] The final affidavit, signed by Trooper Dolis but not notarized, exclusively addresses the collateral issue of whether or not Dolis's truck was towed and, as such, has no direct relevance to Dolis's guilt or innocence.

resided with Stefanits at the time of the incident or had authority to enter the home that she owned on February 11, 1999. The affidavits from Dolis's friends—John Mazur, James Nunley, James Mazur, Tom Shrepfer, Jerry Grzanka, Tim DeMarco and Bill Cellak—along with the affidavit from his mother, Rita Dolis, only state that to each affiant's knowledge, Dolis resided with Stefanits until approximately the time of the robbery. *See Pet.* at 148, 150, 152, 154, 155, 158; *Pet. Resp.* at 21; *Pet. Supp. Resp.* at 6. Several affidavits state that Dolis resided at the Stefanits residence until February 11, 1999, *Pet.* at 148, 155, 158, *Pet. Supp. Resp.* at 6; others are less specific and claim that Dolis resided there until February 1999, *Pet.* at 150, 152, 154, *Pet. Resp.* at 21. One affidavit states that John Mazur phoned Dolis at Stefanits's residence on February 8, 1999. *Pet.* at 149. However, none of these affiants claims any knowledge as to whether Dolis had authority to enter or whether Stefanits granted Dolis authority to enter her home on February 11, 1999. Dolis's own self-serving affidavit claiming that he had permission to enter does not make up for these deficiencies. *Pet.* at 160. *See Bivens v. Hulick*, 2008 WL 5427748, at *5 (N.D. Ill. Dec. 29, 2008, Judge Joan B. Gottschall) (denying attempt to excuse procedural default through a showing of actual innocence based on unreliable affidavits). Thus, these affidavits do not rise to the level of "documentary, biological (DNA), or other powerful evidence" required to excuse a procedurally defaulted claim. *See Hayes*, 403 F.3d at 938.

Moreover, even Dolis's affidavit does not refute the trial testimony that the door to Stefanits's home was locked on the morning of February 11 and that he did not have a key; nor does it explain how he gained entry to the residence. *Id.* Despite Dolis's attacks on Stefanits' veracity, he fails to deny stealing Stefanits's purse on February 8, 1999 or cutting a hole in her screen door. *Pet.* at 160. Thus, even if true, the facts alleged by Dolis, his friends, and his mother do not refute the facts offered by Stefanits at trial or establish his authority to enter her home on the day of the

incident. Dolis's assertions are further undercut by his brother's testimony that he received phone calls on February 10 and 11 from Dolis from the same residence (not Stefanits's) where Dolis was found by the police later on February 11. (Ex. Q at D156-60.) Given that the new affidavits offered by Dolis do not explain why he returned to a residence other than Stefanits's after the incident or establish Dolis's permission to enter Stefanits's home through legal means on February 11, the affidavits do not make it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 536-37.

The two complaints and the jail visitation logs submitted by Dolis are less persuasive than the affidavits. Dolis asserts that because the complaints list his address as 3340 N. Kilpatrick and were signed by Stefanits and Podeszwa, he must have resided at 3340 N. Kilpatrick and therefore cannot be guilty of home invasion. *Pet.* at 49, 107. At the most, the complaints establish that Dolis's last known address was at 3340 N. Kilpatrick. Given Stefanits's testimony that Dolis did not have authority to enter her home on the date in question and the corroboration described above, these complaints do not make it more likely than not that a reasonable juror would now find Dolis innocent of home invasion. *See House*, 547 U.S. at 536-37.

Dolis introduces jail visitation logs to show that he and Stefanits were in an ongoing relationship on February 11, 1999. *Pet.* at 24, 30, 55. Dolis alleges that because his relationship with Stefanits was "forever domestic," he had permission to enter her residence on the morning in question. *Pet. Resp.* at 11. However, given the evidence presented at trial—notably the cut screen, the lack of key used to enter, and Stefanits's testimony that he did not have permission to enter—a reasonable jury would not likely change its verdict upon hearing further evidence of a romantic relationship between Stefanits and Dolis. *See House*, 547 U.S. at 536-37; *see also U.S. ex rel. Fleming v. Schomig*, 129 F.Supp.2d 1160, 1164 (N.D. Ill. 2001) (noting that "the fact that Mr.

19

Fleming had a key, if he did, and a past relationship with Ms. Thompson would not be sufficient evidence of actual innocence of the home invasion charge to conclude that no reasonable juror would have convicted him").

Thus, Dolis has not demonstrated evidence of his actual innocence such that this Court will consider his procedurally defaulted claims. *See Schulp*, 513 U.S. at 327-329.

III.     **Cognizability of Fourth Amendment Claim**

In his ninth claim, Dolis alleges that his warrantless arrest violated the Fourth Amendment and that his trial counsel failed to move to quash that arrest. Construing his *pro se* habeas petition liberally, *Szemborski v. Endicott*, 175 F.3d 1021, 1022 (7th Cir. 1999), this claim encompasses both a Fourth Amendment claim and a Sixth Amendment ineffective assistance of counsel claim.

A specific set of restrictions apply to limit habeas review of Fourth Amendment claims. "Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 482 (1976). In deciding whether the state court gave a petitioner a full and fair opportunity to litigate a Fourth Amendment Claim, a federal habeas court determines: (1) whether the state procedural mechanism in the abstract presents the opportunity to raise such a claim; and (2) whether the presentation of the claim was frustrated by a failure of the mechanism. *See United States ex rel. Bostick v. Peters*, 3 F.3d 1023, 1027 (7th Cir. 1993) (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)). Unless a petitioner claims that particular circumstances led to his failure to raise a Fourth Amendment claim in state court, procedures available under Illinois law are said to provide defendants a full and fair opportunity to raise such a claim. *See id.* Unlike in *Peters*, where the trial court informed the defendant that he did not need to testify at a suppression hearing

20

and thus subverted his right to raise a Fourth Amendment claim, *see id.*, Dolis does not claim particular circumstances that led to a "failure" of the procedural mechanisms available to him in Illinois state court. Accordingly, because "Illinois' mechanism for the resolution of Fourth Amendment claims does afford, in the abstract, defendants the opportunity to raise their Fourth Amendment claims," *Stone*, 428 U.S. at 482, and Dolis did not raise a his Fourth Amendment claim in state court, he may not be granted federal habeas relief on that claim.

Within this same claim, Dolis also alleges ineffective assistance of counsel under the Sixth Amendment based on his counsel's failure to move to quash his arrest. Restrictions on habeas review of Fourth Amendment claims do not extend to "Sixth Amendment ineffective-assistance-of-counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue." *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986). However, as explained in section I (a) above, because the appellate court found that Dolis forfeited this ineffective assistance claim in its review of Dolis's post-conviction petition, *see People v. Dolis*, No. 1-05-0988 (Ill. App. Ct. 2006), this claim is dismissed as procedurally defaulted. *See Szabo*, 313 F.3d at 395.

IV.     **Non-Defaulted Judicial Inquiry Claim**

Dolis's claim that his trial judge should have conducted an inquiry as to whether his trial counsel was effective survives procedural default because he raised it both on direct review, *see People v. Dolis*, No. 1-00-0759 (Ill. App. Ct. March 7, 2002) (unpublished), and in his first PLA to the Illinois Supreme Court, *see People v. Dolis*, 775 N.E.2d 5 (Ill. 2002). *See O'Sullivan*, 526 U.S. at 845-48. During his trial, Dolis wrote several inflammatory letters to the judge. (Ex. O at C52-66.) These letters included, among other things, comments about his attorney's performance and accusations that the judge, prosecutor, defense counsel, Chicago Police and others were conspiring against him. (Ex. O at C52-66.) Dolis maintains that the trial court was obliged to conduct an

21

inquiry into the performance of his appointed counsel based on these letters pursuant to the Illinois Supreme Court's decision in *People v. Krankel*, 464 N.E.2d 1045 (Ill. 1984).

In *Krankel*, the defendant raised a pro se post-trial challenge to his attorney's effectiveness after the attorney failed present an alibi defense at trial. *See id*. at 1048. The parties agreed that the trial court should have appointed new counsel to represent that defendant at a post-trial hearing on his ineffective assistance of counsel claim. *See id*. at 1049. As such, the Illinois Supreme Court remanded the matter for a hearing on the defendant's claim of ineffective assistance and motion for a new trial with new appointed counsel. *See id*. *Krankel* stands for the proposition that if allegations in a pro se post-trial motion alleging ineffective assistance of counsel show that counsel may have neglected the case, new counsel should be appointed to represent the defendant at a hearing on the claim of ineffective assistance. *See People v. Moore*, 797 N.E.2d 631, 637 (Ill. 2003).

Thus, contrary to Dolis's argument, *Krankel* does not stand for the proposition that a trial judge must make an affirmative inquiry of any sort, including an inquiry into ineffective assistance claims raised in inflammatory letters to the judge during trial. *See id.* Furthermore, unlike in *Krankel* where the trial judge held a post-trial hearing on Krankel's motion for a new trial and the issue was whether new counsel should have been appointed to present ineffective assistance claims in that hearing, *Krankel*, 464 N.E.2d at 1049, no post-trial hearing on ineffective assistance was deemed necessary or conducted in Dolis's case. Indeed, the appellate court on direct review affirmed Dolis's conviction and denied all of his claims that counsel may have neglected his case. *See People v. Dolis*, No. 1-00-0759 (Ill.App.Ct. March 7, 2002) (unpublished).

More importantly, as previously noted, federal habeas review is narrow in scope and a federal court may only grant the writ of habeas corpus when a state court decision is contrary to or unreasonably applies federal law as determined by the Supreme Court. *Williams v. Thurmer,* 561

F.3d 740, 742 (7th Cir. 2009) (citing 28 U.S.C. § 2254(d)(1)). Thus, even if the holding in *Krankel* did apply in this case, Dolis alleges that his trial court's behavior violated Illinois state law, not federal law. Moreover, no clearly established federal law set forth by the Supreme Court dictates that a trial judge must conduct an official inquiry when a defendant writes letters of complaint about appointed counsel. Because Dolis does not allege any violation of federal law as determined by the Supreme Court, and no Supreme Court precedent mandates the inquiry sought by Dolis, this Court may not grant the writ of habeas corpus over Dolis's judicial inquiry claim. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006).

Because the Court has dismissed Dolis's procedurally defaulted claims and denied his remaining claims, Dolis's petition for writ of habeas corpus is denied.

## MOTION FOR EVIDENTIARY HEARING

Dolis also moves this Court for an evidentiary hearing on his petition. A federal court reviewing a petition for writ of habeas corpus must hold an evidentiary hearing where facts are in dispute and the petitioner did not received a full and fair hearing in state court. *See Allen v. Buss*, 558 F.3d 657, 664 (7th Cir. 2009) (citing *Townsend v. Sain*, 372 U.S. 293, 312 (1963)). "A hearing is required if: '(1) the petitioner alleges facts which, if proved, would entitle him to relief and (2) the state courts, for reasons beyond the control of the petitioner, never considered the claim in a full and fair hearing.'" *Id.* (quoting *Davis v. Lambert*, 388 F.3d 1052, 1061 (7th Cir. 2004).

In his motion, Dolis fails to address specifically why an evidentiary hearing is warranted, instead reasserting his innocence and arguing that his term of supervised release is illegal. He further repeatedly accuses several members of the attorney general's office of lying. Federal habeas courts are not an alternative forum for trying issues and facts that a habeas petitioner did not pursue at the state court level. *See Williams v. Taylor,* 529 U.S. 420, 432-34, 120 S.Ct. 1479, 146 L.Ed.2d

435 (2000). As discussed above, Dolis never pursued his illegal supervised release claim before the Illinois state courts, and made no mention of his innocence claim until his second PLA to the Illinois Supreme Court. Thus, Dolis has not "established that he was diligent in his attempts to develop the factual record in the state court," obviating the need "to satisfy the remaining provisions of § 2254(e)(2) in order to obtain an evidentiary hearing." *Dalton v. Battaglia,* 402 F.3d 729, 736 (7th Cir.2005) (citation omitted); *see also Price v. Thurmer,* 514 F.3d 729, 733-34 (7th Cir.2008). Accordingly, the Court turns to the dictates of Section 2254(e)(2) of AEDPA.

Section 2254(e)(2) provides that, if a habeas petitioner failed to develop a factual basis for a claim in state court, the federal habeas court "shall not hold an evidentiary hearing on the claim" unless the habeas petitioner can show that:

> (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. *See* 28 U.S.C. § 2254(e)(2).

Dolis does not argue that there is a new rule of constitutional law that was previously unavailable to him pertaining to his innocence or illegal term of supervised release claims. Nor has Dolis shown any factual predicate that he could not previously have discovered through the exercise of due diligence—indeed, the affidavits, jail visitation logs, and complaints tendered by Dolis contain information that could have been discovered before trial. *See People v. Harris*, 794 N.E.2d 181, 188 (Ill. 2002) (affirming dismissal of "claim of actual innocence without an evidentiary hearing" because evidence in newly presented affidavits "could have been discovered before trial with the exercise of due diligence" on the part of the defendant—the "mere fact that these affidavits are dated after the time of trial does not render the evidence newly discovered"). Furthermore, the Court has

considered the evidence of innocence presented by Dolis above and found that it would not be sufficient to "establish by clear and convincing evidence that . . . no reasonable factfinder would have found the applicant guilty." 28 U.S.C. § 2254(e)(2). Dolis does not present new, concrete evidence relevant to his illegal term of supervised release claim, and as such, no new factual findings are necessary to determine this claim. Because Dolis fails to satisfy the conditions of Section 2254(e)(2), the Court, in its discretion, denies his request for an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2). *See Schriro v. Landrigan*, 550 U.S. 465, 474-75 (2007) (decision to grant evidentiary hearing under Section 2254(e)(2) rests in the discretion of the district court).

For the reasons stated, Dolis's Petition for Writ of Habeas Corpus and his Motion for an Evidentiary Hearing are denied. The Court also strikes Dolis's Motions to Expedite this Court's Final Order, for Immediate Unconditional Release, and for Immediate Release as moot.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: December 23, 2009